Filed 6/28/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | D072389 |
| Plaintiff and Respondent, | (Super. Ct. No. J231848) |
| v. | |
| A.R., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Browder A. Willis, Judge. Affirmed.

Pauline E. Villanueva, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski, and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

Minor A.R. (the Minor) challenges a dispositional order committing him to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice (hereafter, DJJ). He argues the juvenile court abused its discretion in committing him to DJJ, on the grounds there was no substantial evidence that a less restrictive placement would be inappropriate or ineffective. He also argues the court erred by applying his custody credits to the overall maximum term of confinement, instead of the lower maximum term set by the court. In a supplemental brief, the Minor argues there was no substantial evidence of probable benefit from the DJJ commitment, citing a recently decided case, *In re Carlos J.* (2018) 22 Cal.App.5th 1 (*Carlos J.*). We reject these contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

At the time of the disposition hearing, the Minor was 18 years old. His history with the juvenile justice system began when he was 13 years old, and a petition was first filed against him. In August 2012, he admitted two counts of residential burglary (Pen. Code, §§ 459, 460), and was declared a ward. He was placed at CFLC (California Family Life Center) - Ranch Creek, and later at Aiming High Treatment Center.

In August 2013, the Minor admitted to misdemeanor appropriation of lost property (Pen. Code, §§ 485, 488). He was placed at Quality Group Homes, Inc. Yale House, and then on home supervision with his father.

In May 2014, the Minor admitted to burglary, robbery, and use of a deadly or dangerous weapon (Pen Code, §§ 459, 211, & 12022, subd. (b)(1).). He was placed at Center for Positive Changes.

2

In October 2014, the Minor again admitted to residential burglary. He was committed to Breaking Cycles, then released to home supervision with his mother. He also participated in Reflections North and the Reflections Day Program.

Between February and October 2015, the Minor admitted to various probation violations, including use of force/fear on another person and leaving a court-ordered placement without permission. In November 2015, he was committed to Camp Barrett, to be performed at East Mesa.

In December 2016, the Minor admitted violating the controlled substance condition of his probation. The court ordered him committed to the Youth Offender Unit (Y.O.U.) program, but stayed the commitment pending a review hearing. In January 2017, the Court vacated the commitment and placed the Minor with his mother.

The events leading to the Minor's latest petition took place in March 2017. He was drinking alcohol and smoking marijuana at home with other minors, when his mother told them to leave. He and two others broke into a nearby home. The victim awoke and chased them. When the Minor was attempting to jump a gate, the victim tackled him. The Minor dropped an item he had stolen, hit him, and fled. The Minor admitted to robbery. The probation department recommended placement at Y.O.U. The district attorney sought placement at DJJ.

The juvenile court held a contested disposition hearing. The Minor's counsel argued for placement at Y.O.U. The prosecutor argued for DJJ placement, arguing, in part, that Y.O.U. was "another program at East Mesa where he is not going to thrive" and "[t]here's no reason to believe he's going to do well" at the facility "he's been essentially

3

in and out of . . . . " She also noted he was 18, and "we have to do everything we can for him before he goes to the adult court." The court stated: "I think the basic premise of the idea [is] that change is what would create the best opportunity . . . . He has been in East Mesa for so long. So adjusted to it that moving from hallway to hallway would not create the incentive or environment that would be truly conducive. That's a pretty fundamentally sound, rational argument."

The court indicated it was initially aligned with the Minor, but the prosecutor "made a lot of sense." The court ordered placement at DJJ: "I am going to find that the least restrictive means of a local commitment, while they would meet the basic needs, I find that the criminogenic factors, the history presented, the need for drastic measures and the well of services available in the state facility warrant and support a commitment to that facility." The court found "DJJ will meet the rehabilitative goals that are appropriate for moving you in the right direction." The court subsequently noted it was persuaded that "the [Y.O.U.] is not going to be the appropriate place," explaining: "We have tried repeatedly to rehabilitate you. None of those rehabilitative goals have been met . . . ."

The court then stated, "You're 18 years old and they will hold you until 21. So I have to set a term that meets that." The court set the term:

> "I'm designating the maximum term at seven years and yes, I'm deviating from the maximum. The maximum would be twelve years adding each and every petition together. The court is exercising it[s] discretion not [to] set a twelve[-]year term by just taking the two petitions that have the [Penal Code section] 211 and setting the maximum term at seven years deviating downward from the maximum term. The credits, two years, 11 months and 19 days of credit which actually come to a total number of credits of 1,076 days

4

is applied to the downward deviated term. And that will leave—strike that, that is applied to the twelve years. So we have the full seven[-]year term available to DJJ."[1]

The court addressed the Minor's mother, indicating "[h]e'll be in DJJ until 21." The court continued, in part: "I'm applying the maximum credits to the maximum term leaving the total of seven years with the understanding that DJJ requires him to remain in custody until—his eligible parole date will be at 21." The court's minute order stated that, in setting the term under Welfare and Institutions Code section 731, subdivision (b),[2] it considered the facts and circumstances.

The Minor timely appealed.

## DISCUSSION

### A.    *Placement at DJJ*

The Minor contends the juvenile court abused its discretion by committing him to DJJ. According to the Minor, there is no substantial evidence that there would be probable benefit to the commitment, or that a less restrictive placement would be ineffective or inappropriate. We disagree.

"The appellate court reviews a commitment decision for abuse of discretion, indulging all reasonable inferences to support the juvenile court's decision." (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) "A DJJ commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the

---

[1]    The court noted Penal Code section 211 is a Welfare and Institutions Code section 707, subdivision (b), offense. The court also stated the "remaining petitions are served concurrently," so they "do not add to . . . the seven years."

[2]    Further statutory references are to the Welfare and Institutions Code, unless noted.

5

commitment and less restrictive alternatives would be ineffective or inappropriate." (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250-1251 (*M.S.*) [substantial evidence supported court's reason for finding less restrictive alternative would be inadequate or ineffective].) "Although the DJJ is normally a placement of last resort, there is no absolute rule that a DJJ commitment cannot be ordered unless less restrictive placements have been attempted." (*Id.* at p. 1250.)

We examine the evidence in light of the purposes of the juvenile court law. (*In re Michael R*. (1977) 73 Cal.App.3d 327, 333; *In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542 (*Carlos E.*) [purposes of the juvenile system include "the protection of the public as well as the rehabilitation of the minor"].)

In his opening brief, the Minor concedes "there is some evidence of a probable benefit to [him] from a DJJ commitment." In his supplemental brief, he argues there was no substantial evidence of probable benefit because "there was no specific information in the record regarding the probable benefit . . . from such a commitment," citing *Carlos J.*, *supra,* 22 Cal.App.5th at page 4.

*Carlos J.* is distinguishable. There, a minor without a substantial record in the juvenile court system admitted to assault with a firearm and a gang enhancement. (*Id.* at pp. 4, 7.) The probation department recommended DJJ, citing the gravity of the offense and indicating gang intervention services were warranted (but not mentioning specific programs at DJJ). (*Id.* at pp. 7-9.) The juvenile court committed the minor to DJJ, indicating it could not "get over the seriousness of the offense" and noting recent changes at DJJ allowed it to "provide additional services . . . ." (*Id.* at p. 9.) The Court of Appeal

reversed, finding no substantial evidence of probable benefit and explaining "there must be some specific evidence in the record of the programs at the [DJJ] expected to benefit a minor." (*Id.* at p. 10.) Here, the Minor had a long history with the juvenile system and the juvenile court had already tried various less restrictive placements. The court properly focused on "crimogenic factors, the history presented, [and] the need for drastic measures," along with the "well of services available," in concluding DJJ would meet his rehabilitative goals. We are satisfied there is substantial evidence of probable benefit from a DJJ placement.[3]

We now turn to whether there is substantial evidence to support the juvenile court's finding that the less restrictive alternative (here, Y.O.U.) would be inappropriate. We conclude there is. Since he was 13 years old, the Minor had engaged in numerous criminal activities, including multiple felonies. The juvenile court had already tried a series of less restrictive settings, including CFLC - Ranch Creek, Quality Group Homes, Inc. Yale House, Center for Positive Changes, Breaking Cycles, and Camp Barrett, as well as home supervision. The court had even ordered placement at Y.O.U., but vacated it—after which the Minor drank, smoke marijuana, and committed the robbery that led to his DJJ placement. This history leaves little doubt that less restrictive alternatives have been wholly ineffective in rehabilitating the Minor. The need for a significant change

---

[3] (See *In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486 ["There is no requirement that the court find exactly how a minor will benefit from being committed to DJJ. The court is only required to find if it is probable a minor will benefit from being committed, and the court did so in this case."]; accord, *In re Robert D.* (1979) 95 Cal.App.3d 767, 773.)

from prior placements is amplified by his age; at 18, there is little time remaining before he faces the adult correctional system.

The Minor's arguments are not persuasive. First, he disputes his lack of progress, citing a 2016 probation department report that stated he told the probation officer he used marijuana and the officer commended him for "taking responsibility . . . and informing [him] of his relapse" and noting he did well in juvenile hall after the 2017 robbery arrest. He also contends he was living at home when that robbery took place, and it was a difficult situation (given his mother's prior incarceration and other issues). We do not minimize the changes he has managed to make or the challenges he faces, but this evidence neither establishes rehabilitation, nor undermines the court's finding that Y.O.U. would be inappropriate.

Second, the Minor contends the probation department recommended Y.O.U., noting it outlined the programs he would participate in, and the court initially was inclined to place him there. But the court ultimately found Y.O.U. was not appropriate. And the problem with Y.O.U. was not necessarily the programs available there (although, as noted *ante*, the court did find DJJ had a "well of services"), but that the Minor had repeatedly failed to succeed at other less restrictive placements and change was needed imminently. The court could reasonably conclude that, notwithstanding the department's recommendation, Y.O.U. would be inappropriate and ineffective. (See *In re Edward C.* (2014) 223 Cal.App.4th 813, 828-829 [rejecting argument that juvenile court should have followed probation officer's recommendation for release to aunt and outpatient program

8

where, among other things, the minor had "made little, if any, progress toward rehabilitation" and "performed poorly in two local residential treatment programs"].)

The juvenile court did not abuse its discretion in committing the Minor to DJJ.

### B.     *Custody Credits*

The Minor contends the court erred by applying his custody credits to the overall maximum term of 12 years, rather than the seven-year maximum term set by the court. He also contends the court misunderstood the law, contributing to its alleged misapplication of the custody credits.  We reject these arguments.

Section 726 provides, in pertinent part:

> "If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship . . . , the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court."  (§ 726, subd. (d)(1).)

Section 731 provides that a ward committed to DJJ cannot be held longer than the "maximum period of imprisonment" applicable to an adult and then states, in part:

> "A ward committed to the [DJJ] also may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement as determined pursuant to this section."  (§ 731, subd. (c).)

When a minor is committed to DJJ, "[s]uccinctly put, the juvenile court must consider the crime's relevant 'facts and circumstances' in determining whether the minor's maximum

9

commitment period should be equal to or less than the maximum confinement term for an adult." (*In re Julian R.* (2009) 47 Cal.4th 487, 495.)

"Although the juvenile court's decisions regarding confinement are reviewed for abuse of discretion [Citation], a minor is entitled to credit against his or her maximum term of confinement for the time spent in custody before the disposition hearing." (*In re: Emilio C.* (2004) 116 Cal.App.4th 1058, 1067 (*Emilio C.*).) "A juvenile's entitlement to predisposition custody credit is determined by [section] 726." (*Emilio C.,* at p. 1067; *In re Eric J.* (1979) 25 Cal.3d 522, 536 ["[I]n order to carry out the mandate of section 726 . . . that a juvenile 'not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted' of the same offenses, appellant must be given precommitment credit"].)

The juvenile court complied with these requirements. The court first determined the overall maximum term to be 12 years. Pursuant to section 731, the court then considered the facts and circumstances at issue, and exercised its discretion to set Minor's maximum term at seven years. The court then applied the Minor's custody credits, consistent with section 726. (*Emilio C.*, *supra*, 116 Cal.App.4th at p. 1067; *Eric J.*, *supra*, 25 Cal.3d at p. 536.) The credits were applied to the overall maximum term of 12 years, and the Minor's seven-year maximum term remained lower than the maximum that could have been imposed upon an adult. (*Eric J.*, at p. 536.) We conclude the court did not err in applying the credits to the overall maximum term of 12 years.

The Minor's arguments again are unpersuasive. First, he contends the juvenile court's exercise of discretion was limited to considering the facts and circumstances of

10

the case, and, once it set his maximum term at seven years, the custody credits should have been applied to that term. As discussed *ante*, custody credit is determined pursuant to section 726, and the court's application of credits was consistent with that section. The Minor merely assumes that if a juvenile court sets a lower maximum term under section 731, it is required to apply the custody credits to that lower term. But he cites no authority for his position.[4] For the same reasons, we also reject the Minor's argument that the juvenile court's approach "deprived" him of his credits.

Second, the Minor contends there is no authority permitting the court "to exercise its discretion *and* utilize . . . credits" to reach a lower term. The record does not support this characterization of the court's approach. It did not use the credits to reach a seven-year term; it set the term, and then applied the credits such that the term was not reduced further. This application of credits was not erroneous, as discussed *ante*.

Third, the Minor argues that once the court chose to run three petitions concurrently, and use the robbery petitions to set a maximum term of seven years, its application of custody credits to a 12-year maximum was illogical. We disagree. The court stated that "[t]he maximum would be twelve years adding each and every petition together," thus identifying this as the overall maximum term. We interpret the court's reliance on the two robbery petitions (and its decision to run the other petitions

---

4      The cases he does cite either confirm propositions that are not in dispute (i.e., that minors are entitled to credit against their maximum confinement time; where petitions are aggregated, credits must be too; see e.g., *Emilio C.*, *supra*, 116 Cal.App.4th at p. 1067; *In re Stephon L.* (2010) 181 Cal.App.4th 1227, 1231-1232), or are otherwise inapposite (*In re Richard W.* (1979) 91 Cal.App.3d 960, 982 [pre-*Eric J.* case].)

11

concurrently) as its rationale for setting a seven-year maximum term for Minor. But it never suggested the overall maximum was anything besides 12 years.[5]

Finally, the Minor argues the trial court misunderstood the law, contributing to its purported error in applying his credits. Citing DJJ discharge dates under section 1769, he contends the court mistakenly "believed [he] would spend no more than approximately three years in custody and would be discharged at the age of 21" (such that it would have no "practical effect" if it applied the credits to the seven-year term). The court did comment he would be held until 21, but then stated his *parole date* will be at 21.[6] This is consistent with the court's decision to set his term for seven years. Meanwhile, the court never implied, much less stated, that the credits did not matter because he would be released by then. To the contrary, when applying his credits to the 12-year period, the court stated, "So we have the full seven[-]year term available to DJJ." There is no evidence the court misunderstood the law. (See *People v. Thomas* (2011) 52 Cal.4th 336,

---

[5] The Minor makes additional points in his reply brief. We do not address issues raised on reply (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93), and they lack merit regardless. First, he states the court "failed to . . . properly aggregate his credits," arguing that if it aggregated his petitions to reach a 12-year term and used its discretion to reduce it, he was "entitled to the full 1,076 days of precommitment credit" to the reduced term. But he does not identify any days omitted by the court. Rather, he just disputes the court could apply those days to the 12-year term. It could. Second, he contends the purpose of credits is to decrease the amount of time he would have to serve and the failure to award them is error, citing *People v. Kunath* (2012) 203 Cal.App.4th 906. He provides no authority for this supposed purpose of custody credits in the juvenile context, and *Eric J.* suggests otherwise. (*Eric J.*, *supra*, 25 Cal.3d at p. 536.) *Kunath* is distinguishable. (*Id.* at p. 911 [court failed to award dual presentence credits to adult offender].)

[6] The court also recognized robbery was a section 707, subdivision (b) offense (subject to discharge *after* age 21 under § 1769). (§ 1769, subd. (c) [for offenses under § 707, subd. (b), on or after July 1, 2012, ward is discharged after 2 years or age 23, whichever is later, unless order for further detention is made under Art. 6].)

361 ["In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.' "].)

The Minor does not establish the juvenile court erred in applying his custody credits.

DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.

13