Filed 5/10/21  In re M.D. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.D.,<br><br>Defendant and Appellant. | F081441<br><br>(Super. Ct. No. JJD072309)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Hugo J. Loza, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Timothy L. O'Hair, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Poochigian, Acting P.J., Franson, J. and Smith, J.

Minor, M.D., appeals from a disposition order committing him to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ). (Welf. & Inst. Code, § 602.) He contends that the juvenile court abused its discretion by committing him to DJJ. The People disagree. We affirm.

## PROCEDURAL SUMMARY

### Prior Petitions and Violations of Probation

On June 27, 2019, the Tulare County District Attorney filed a third amended wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD072309 (first petition), alleging minor committed grand theft (Pen. Code, § 487, subd. (a);[1] count 1), receiving stolen property (§ 496, subd. (a); count 2), and giving false information to a police officer (§ 148.9, subd. (a); count 3).

On July 3, 2019, minor admitted the truth of the petition in exchange for an opportunity to participate in the deferred entry of judgment program. The matter was referred to the probation department for a disposition report and recommendation and scheduled for a disposition hearing on August 5, 2019. Minor was released to his mother's custody pending the disposition.

On July 23, 2019, the Tulare County District Attorney filed a wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD072309 (second petition), alleging that on July 20, 2019, minor received a stolen vehicle (§ 496d, subd. (a); count 1), and unlawfully drove or took a vehicle (Veh. Code, § 10851, subd. (a); count 2).

On July 31, 2019, minor entered a conditional plea whereby he admitted the truth of the second petition in exchange for an additional opportunity to participate in a deferred entry of judgment program. On August 19, 2019, the juvenile court determined minor was not suitable for deferred entry of judgment. The juvenile court declared minor a ward of the court, granted him probation, and permitted him to reside with his father.

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

2.

On September 4, 2019, minor admitted that he violated his probation. On September 18, the juvenile court ordered minor remain a ward of the court, reinstated his probation on the second petition, and committed him to the custody of the Tulare County short-term program for a term not to exceed 180 days.

On December 13, 2019, the Tulare County District Attorney filed a wardship petition (Welf. & Inst. Code, § 602, subd. (a)) also in case No. JJD072309 (third petition), alleging minor drove under the influence of a controlled substance (Veh. Code, § 23152, subd. (f); count 1), was under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a); count 2), and drove without a license (Veh. Code, § 12500, subd. (a); count 3).

On January 29, 2020,[2] minor admitted the truth of counts 1 and 3 and admitted a violation of probation in exchange for dismissal of count 2 in the third petition. On February 13, the juvenile court ordered minor continue as a ward of the court and reinstated probation.

On March 10, the Tulare County District Attorney filed a wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD072309 (fourth petition), alleging minor unlawfully drove or took two vehicles on two dates (Veh. Code, § 10851, subd. (a); counts 1, 3, 6, & 8), received two stolen vehicles on two dates (§ 496d; counts 2, 4, 7, & 9), committed assault with a firearm (§ 245, subd. (a)(2); count 5), evaded an officer in a motor vehicle (Veh. Code, § 2800.2, subd. (a); count 10), and resisted a peace officer (§ 148, subd. (a)(1); count 11). The petition further alleged that minor personally used a firearm during the commission of count 5 (§ 12022.5, subd. (a)(1)).

On March 18, minor admitted the truth of counts 1, 3, and 5, and the personal use of a firearm allegation in the fourth petition. The remaining counts were dismissed. On

---

**2**    All further dates refer to the year 2020 unless otherwise stated.

April 1, the juvenile court ordered minor to continue as a ward of the court and committed him to a local long-term program (juvenile hall) for 24 months.

**The Current Petition**

On April 21, the Tulare County District Attorney filed a wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD072309 (fifth petition), alleging that minor committed an assault on a peace officer (§ 245, subd. (c); count 1) and an assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 2).

On May 6, minor admitted the truth of counts 1 and 2 of the fifth petition. On June 11, the juvenile court committed minor to DJJ for a maximum term of 20 years four months.

On July 16, minor filed a notice of appeal.

## FACTUAL SUMMARY

**The Underlying Offense of the Current Petition[3]**

On April 14, minor was in the custody of the Tulare County local long-term program. While he was involved in morning physical training, probation correctional officer A.R. told minor he and others were not exercising in a proper manner. Minor told A.R. that he was in compliance. In response, A.R. "placed [minor] in the cover position." Minor believed "A.R. was being hard on [him]" and "decided to take matters into his own hands."

At approximately 1:27 p.m., while minor was locked out of his cell during recreation time, he asked A.R. to unlock the door to his cell so he could use the toilet in his cell. When A.R. keyed open the door to minor's cell, minor and another minor stood from their seats and approached A.R. Minor struck A.R. in the head and face until a

---

**3** Minor admitted the truth of the petition and acknowledged the factual basis for the plea was contained in the Tulare County Probation Department's report. The factual summary is therefore drawn from the predisposition report of the probation officer.

4.

correctional officer pulled him away. The other minor attempted to strike A.R. but was restrained by a correctional officer.

**The Disposition Hearing**

At the disposition hearing, minor requested to be afforded an additional opportunity to participate in the Tulare County local long-term program. His counsel explained that he had only been in the program for about two weeks when the new petition was filed so he had not yet obtained the benefit of the institutional programming. Further, his counsel argued that minor would not benefit from a DJJ commitment because, as he understood it, no minors were being accepted to DJJ facilities. Instead, the minor would wait for transfer and not have access to otherwise available institutional programming.

The juvenile court declined minor's request and explained the basis for its disposition. Although minor was not yet 17 years old, the offense for which he was committed to the long-term program "was actually a very serious set of circumstances that involved car theft and … use of a firearm." Based on that offense, the court explained that it could have committed him to DJJ. Instead, the court afforded minor an additional commitment at the local long-term level despite his multiple new offense petitions and probation violations since July 2019. Then, within two weeks of the minor's commitment to the long-term program, he "conspired with another youth there at the facility to attack a correctional officer." The correctional officer "suffered fairly serious injuries to [his] face. The court further explained that minor had a very serious history of regular drug use,[4] admitted to being gang related, had gang tattoos, and was involved in an additional physical confrontation in the long-term program after his assault

---

[4] Minor began using marijuana and alcohol at age 12 and began using methamphetamine and cocaine at age 14. Thereafter, minor reported using alcohol, marijuana, and cocaine on a daily basis and methamphetamine three to four times per week.

on A.R. The court stated that, as a result of minor's behavior, it was "concerned about the safety of other youth … [and] correctional officers … at the hall." It further noted that minor had acknowledged having a "significant anger management problem."

Further, the juvenile court also considered the probation officer's report. Beyond that which the court discussed on the record, the report reflected that minor had never been diagnosed with a mental health condition and denied having any mental health issues beyond having difficulty managing his anger. The probation report further reflected that minor did not appear to be developmentally delayed, was not enrolled in special education classes, and had received a C+ school grade average in his February reporting period.

In light of the above considerations, the probation officer recommended that minor be committed to DJJ for a longer duration than was available at the local long-term program "in order to adequately address his criminogenic needs" and so he could participate in the available services, including "Aggression Interruption Training (ten-week cognitive behavioral intervention to improve social skills and control anger); Counter Point (thirty-three session cognitive behavioral program with a goal to reduce the risk o[f] re-offending); and Cognitive Behavioral Interventions for Substance Abuse (thirty-nine session program to teach participants strategies for avoiding substance abuse) …." The juvenile court agreed with the probation officer's recommendation and committed minor to DJJ.

## DISCUSSION

Minor contends that the juvenile court abused its discretion in committing him to DJJ because there were less restrictive alternatives and there was "absolutely no evidence … that [he] would receive any benefit from being committed to DJJ." The People disagree, as do we.

We review a juvenile court's commitment decision for abuse of discretion. (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1080 (*A.R.*) In reviewing a decision for abuse of

6.

discretion, we make all reasonable inferences in support of the trial court's determination. (*Ibid*.) " 'A DJJ commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive alternatives would be ineffective or inappropriate.' " (*Ibid*.)

" 'Although the DJJ is normally a placement of last resort, there is no absolute rule that a DJJ commitment cannot be ordered unless less restrictive placements have been attempted.' " (*A.R.*, *supra*, 24 Cal.App.5th at pp. 1080–1081; *In re Carlos J*. (2018) 22 Cal.App.5th 1, 6 ["A juvenile court may properly consider 'a restrictive commitment as a means of protecting the public safety.' "].) "A juvenile court must determine if the record supports a finding that it is *probable* the minor will benefit from being committed to DJJ." (*In re Jonathan T*. (2008) 166 Cal.App.4th 474, 486.) There is no requirement that the court expressly find exactly *how* a minor will benefit from the commitment. (*Ibid*.) Nor must the juvenile court expressly state on the record its reasons for rejecting less restrictive placements. (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1159.) But the record must contain some evidence that the court concluded DJJ placement would benefit the minor and appropriately considered and rejected reasonable alternative placements. (*A.R.*, *supra*, 24 Cal.App.5th at pp. 1080–1081; *Nicole H*., *supra*, 244 Cal.App.4th at p. 1159; *Jonathan T*., *supra*, 166 Cal.App.4th at p. 486.)

In reviewing a commitment determination, we remember that "the primary goal behind maintaining separate courts and procedures for adults and minors is to ensure that juvenile offenders who have not yet become hardened criminals receive treatment and rehabilitation." (*In re Carlos E*. (2005) 127 Cal.App.4th 1529, 1542.) That goal is reflected in the mandate that juvenile courts consider "the protection of the public as well as the rehabilitation of the minor" in reaching a disposition. (*Ibid*.) In reaching a disposition, a juvenile court must "consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (Welf. & Inst.

7.

Code, § 725.5.)  The court is required to "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care."  (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.)

As the People correctly note, this case is similarly situated to *A.R.*, *supra*, 24 Cal.App.5th 1076, where the minor was committed to DJJ after he was found to have broken into a home, robbed the inhabitant, and hit the inhabitant in the process of fleeing. (*Id*. at p. 1079.)  The court had previously found true petitions that alleged the minor had committed various theft-related and residential burglary offenses, including felony offenses and allegations of weapons use.  (*Id*. at pp. 1078–1079, 1081.)  The minor had also admitted probation violations on at least two occasions.  (*Id*. at pp. 1178–1179.)  The juvenile court had previously attempted less-restrictive placements, including placing the minor on probation in the supervision of a parent, requiring the minor to attend a residential day program while in the custody of a parent, and placing the minor outside of the home, in at least five different facilities.  (*Id*. at pp. 1178–1179, 1182.)

On appeal in *A.R.*, the minor argued that the juvenile court abused its discretion in committing him to DJJ because there was "no substantial evidence that there would be probable benefit to the commitment, or that a less restrictive placement would be ineffective or inappropriate."  (*A.R.*, *supra*, 24 Cal.App.5th at p. 1080.)  The appellate court disagreed—on that record, there was substantial evidence of probable benefit from DJJ placement.  After explaining "the [m]inor had a long history with the juvenile system and the juvenile court had already tried various less restrictive placements," the appellate court emphasized the juvenile court "properly focused on 'criminogenic factors, the history presented, [and] the need for drastic measures,' along with the 'well of services available' " at DJJ in concluding DJJ placement would benefit the minor.  (*Id*. at p. 1181.)

The appellate court in *A.R.* also concluded that the juvenile court had appropriately rejected less restrictive alternatives.  (*A.R.*, *supra*, 24 Cal.App.5th at pp. 1181–1182.)  It

explained that the minor had engaged in numerous criminal activities, including multiple felonies and had been committed to "a series of less restrictive settings." (*Id.* at p. 1182.) The juvenile court had even ordered the minor placed at the "Youth Offender Unit" (juvenile hall) but vacated the placement, "after which the [m]inor drank, smoked marijuana, and committed [a] robbery …." (*Ibid.*) That "history le[ft] little doubt that less restrictive alternatives ha[d] been wholly ineffective in rehabilitating the [m]inor." (*Ibid.*)

Here, like in *A.R.*, evidence existed in the record to support the juvenile court's conclusion that minor would benefit from a DJJ commitment. Like the minor in *A.R.*, minor had a significant history of violations—five wardship petitions found true in under two years—and the juvenile court had attempted probation in the custody of each parent, placement in a local short-term program, and placement in a local long-term program. In each instance, minor had reoffended. The court considered his performance in the long-term program where minor had assaulted a probation correctional officer and then gotten into a fight with another youth. Those incidents reflected not only that the local placement was ineffectual in rehabilitating minor but also that he was a risk to facility staff and other youths at the long-term facility. The court also considered minor's anger management issues, substance abuse issues, and educational performance, and reviewed the probation officer's descriptions of the programs available at DJJ to assist minor in concluding that DJJ placement was appropriate. We conclude that substantial evidence existed that minor would benefit from DJJ placement.

Next, the juvenile court considered and appropriately rejected less restrictive placements. As noted, minor had been placed on probation in the custody of his parents, in a local short-term program, and in a local long-term program (albeit he offended within two weeks of his placement in that program) and reoffended in each instance. The offenses appeared to increase in severity with offenses in the most recent petitions involving a firearm and assaulting a probation officer. Further, after minor's assault on

9.

the probation correctional officer, minor was involved in an additional physical altercation with a youth at the long-term facility. The juvenile court stated that, as a result of minor's violent conduct, it was concerned about the staff and youth at the long-term program.[5] On this record, substantial evidence exists to support the juvenile court's conclusion that a less restrictive placement would have been ineffectual.

The juvenile court did not abuse its discretion in committing minor to DJJ.

## DISPOSITION

The order is affirmed.

---

[5] The juvenile court also reviewed the probation officer's report which discussed the dispositional alternatives. The probation officer recommended against placement with minor's father because it would be a less restrictive environment than the local long-term program where he committed the new offense. The probation officer also recommended against replacement in the long-term program despite not having had a full opportunity to benefit from the services offered. The probation officer's recommendation was in part because minor appeared to be a risk to others. But it was also based upon the officer's observations that minor either did "not understand the severity of the current and prior offenses or may not [have been] taking [his placement] seriously[,]" and "need[ed] a more substantial period of time in custody than local services can provide[] in order to adequately address his criminogenic needs."