Filed 5/10/21  In re T.G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re T.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE , <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.G., <br><br> Defendant and Appellant. | F081084 <br><br> (Super. Ct. No. JJD069301) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Tulare County.  Hugo J. Loza, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carolos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P.J., Smith, J. and DeSantos, J.

Minor, T.G., appeals from a disposition order committing him to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ).  (Welf. & Inst. Code, § 602.)  He contends that the juvenile court abused its discretion by committing him to DJJ.  The People disagree.  We affirm.

## PROCEDURAL SUMMARY

### Prior Petitions and Violations of Probation

On May 20, 2014, the Fresno County District Attorney filed an amended wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. 14CEJ600199-1 (first petition), alleging minor committed two counts of second degree burglary (Pen. Code, §§ 459, 460, subd. (b);[1] counts 1 & 2), three counts of first degree burglary (§§ 459, 460, subd. (a); counts 3, 5, & 7), receiving stolen property (§ 496, subd. (a); count 4), and misdemeanor petty theft (§ 484, subd. (a); count 6).

On June 10, 2014, minor admitted the truth of counts 1, 3, and 5 of the first petition in exchange for dismissal of the other counts.  On July 2, 2014, the juvenile court adjudged minor a ward of the court, placed him on probation, and committed him to juvenile hall for 63 days.

On January 8, 2015, a petition was filed alleging minor violated probation (Welf. & Inst. Code, § 777) (first violation of probation petition).  On January 29, 2015, minor admitted the violation of probation.  On February 11, 2015, the trial court continued minor as a ward of the court, reinstated his probation, and committed him to juvenile hall for 30 days.

On October 14, 2015, the Tulare County District Attorney filed a wardship petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD069301 (second petition), alleging minor committed identity theft (§ 530.5, subd. (a); count 1) and misdemeanor petty theft (§ 484, subd. (a); count 2).

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

On November 23, 2015, minor admitted the truth of the second petition. On December 22, 2015, the juvenile court continued minor as a ward of the court and reinstated his probation.

On February 22, 2016, the Tulare County District Attorney filed a subsequent petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD069301 (third petition), alleging minor committed first degree burglary (§§ 459, 460, subd. (a); count 1).

On February 26, 2016, minor admitted the truth of the third petition. The juvenile court scheduled the matter for a disposition hearing on March 25, 2016.

On March 2, 2016, the Tulare County District Attorney filed a subsequent petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD069301 (fourth petition), alleging minor committed misdemeanor petty theft (§ 484, subd. (a); count 1).

On March 25, 2016, minor admitted the truth of the fourth petition. On the same date, the juvenile court came to a disposition on the counts of the third and fourth petitions. Minor was continued as a ward of the court and reinstated on probation in the custody of his parent.

On May 10, 2016, a subsequent petition was filed alleging minor violated probation (Welf. & Inst. Code, § 777) (second violation of probation petition). On May 11, 2016, minor admitted the violation of probation. On May 27, 2016, the juvenile court continued minor as a ward of the court and reinstated his probation.

On September 22, 2016, the Tulare County District Attorney filed a subsequent third amended petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD069301 (fifth petition), alleging minor committed two counts of first degree burglary (§ 459, 460, subd. (a); counts 1 & 5), two counts of receiving stolen property (§ 496, subd. (a); counts 2 & 7), misdemeanor receiving stolen property (§ 496, subd. (a); count 4), misdemeanor possession of burglary tools (§ 466; count 3), and misdemeanor giving false information to an officer (§ 148.9, subd. (a); count 6).

3.

On October 20, 2016, minor admitted the truth of counts 1, 4, 5, 6, and 7 of the fifth petition.  Counts 2 and 3 of the fifth petition were dismissed.  The juvenile court released minor to the custody of his parent pending the disposition hearing on November 17, 2016.

On November 21, 2016, the Fresno County District Attorney filed a subsequent petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. 14CEJ600199-2 (sixth petition), alleging minor committed one count of dissuading a witness by force or threat (§ 136.1, subd. (c)(1); count 1), assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); count 2), and two counts of misdemeanor shoplifting (§ 459.5, subd. (a); counts 3 & 4).  The petition further alleged that minor used a deadly weapon in the commission of count 1 (§ 12022, subd. (b)(1)).

On December 6, 2016, minor admitted the truth of counts 1 and 3 of the sixth petition, both as misdemeanor violations.  On December 15, 2016, the juvenile court held a disposition hearing on the admitted counts of the fifth and sixth petitions.  The court continued minor as a ward of the court, reinstated minor's probation, and committed minor to the custody of the Tulare County midterm program for 365 days.

On July 12, 2017, the Tulare County District Attorney filed a subsequent petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD069301 (seventh petition), alleging that between September 6, 2016, and November 2, 2016, minor committed first degree burglary (§§ 459, 460, subd. (a); count 1), receiving stolen property (§ 496, subd. (a); count 2), unlawful possession of a concealed firearm (§ 29610; count 3) while also in the possession of armor-piercing ammunition (§ 12022.2, subd. (a)), misdemeanor illegal possession of live ammunition (§ 29650; count 4), misdemeanor resisting a peace officer (§ 148, subd. (a)(1); count 5), and second degree burglary (§§ 459, 460, subd. (b); count 6).

On August 9, 2017, minor admitted the truth of counts 1, 3, 4, 5, and 6 of the seventh petition.  Count 2 and the armor-piercing ammunition enhancement allegation of

4.

the seventh petition were dismissed. On the same date, the juvenile court continued minor as a ward of the court and continued minor in his then-current placement at the Tulare County midterm program.

On January 12, 2018, a subsequent petition was filed, alleging minor violated probation (Welf. & Inst. Code, § 777) (third violation of probation petition). On January 18, 2018, minor admitted the probation violation. On February 1, 2018, the juvenile court continued minor as a ward of the court and reinstated his probation.

On March 6, 2018, the Tulare County District Attorney filed a subsequent petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD069301 (eighth petition), alleging minor committed second degree robbery (§ 211; count 1), first degree burglary (§§ 459, 460, subd. (a); count 2), and resisting a peace officer (§ 148, subd. (a)(1); count 3).

On May 14, 2018, following a contested jurisdictional hearing, the juvenile court found true count 1 of the eighth petition. On June 4, 2018, the court also found true count 2 of the eighth petition. On the same date, the court reached a disposition—it continued minor as a ward of the court, removed him from the custody of his mother, reinstated his probation, and placed him in the Tulare County midterm program for a maximum of 365 days.

### The Current Petition and Violation of Probation

On April 16, 2019, a petition was filed alleging minor violated probation (Welf. & Inst. Code, § 777) (fourth violation of probation petition) by committing the crimes of first degree burglary (§§ 459, 460, subd. (a)), unlawful taking or driving a vehicle (Veh. Code, § 10851, subd. (a)), unlawfully carrying a loaded firearm (§ 25850, subd. (a)), unlawful possession of ammunition (§ 29650), and resisting a peace officer (§ 148, subd. (a)(1)).

On March 3, 2020,[2] the Tulare County District Attorney filed a subsequent third amended petition (Welf. & Inst. Code, § 602, subd. (a)) in case No. JJD069301 (ninth petition), alleging minor committed two counts of assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); counts 1 & 2), one misdemeanor count of resisting a peace officer (§ 148, subd. (a)(1); count 3), and second degree robbery (§ 211; count 4). The petition further alleged that, in the commission of count 1, minor personally inflicted great bodily injury upon the victim (§ 12022.7, subd. (a)).

On March 12, following a contested jurisdictional hearing, the juvenile court found all the allegations of the ninth petition true. On the same date, the juvenile court also found true that minor had violated his probation by committing new offenses.

On March 26, the juvenile court continued minor as a ward of the court, removed him from the custody of his parent, and committed him to DJJ for a term not to exceed 27 years six months, with credit for 1,143 days served.

On April 24, minor filed a notice of appeal.

## FACTUAL SUMMARY

### The Offenses of the Current Petition

*Counts 1 and 2*

On May 31, 2019, Mary and Miguel drove to a big box store in Visalia to purchase video game equipment. When Mary and Miguel arrived at the store, Mary noticed four males in the parking lot. After Mary and Miguel's vehicle was parked, the group of four males walked by the vehicle, looked inside the vehicle, and continued walking toward the store. Mary did not know any of those males and had never seen them before. Mary and Miguel exited the vehicle and entered the store. As they walked to the electronics department, they encountered the group of four males stopped in an aisle. Mary and Miguel attempted to go around the males in a different aisle. As they did so,

---

[2]     All further dates refer to the year 2020 unless otherwise stated.

one of the males yelled something at Miguel but Mary and Miguel kept walking and did not respond.

Mary and Miguel continued walking away from the group of males, but the males ran after them. One of the males asked Miguel where he was from then one of the males hit Miguel from behind. Miguel pushed Mary away and attempted to fight back as all four males hit him. At some point during the fight, Miguel fell. Mary attempted to help Miguel escape and hit one of the males, later identified as minor. Minor hit Mary once or twice in the face, splitting her lip and breaking her front left tooth. The four males, including minor, continued to hit and kick Miguel as he was on the ground and tried to drag him. Mary got on top of Miguel to try to protect him and the males kicked both of them. The four males kicked Mary and Miguel for "a minute or two" or "maybe a little less than that." The males then ran toward the exit.

After the attack ended, Mary was taken to a hospital where she received eight or 12 stitches in her lip. She later noticed that her front left tooth was bent backward and required medical care.

On June 21, 2019, Visalia Police Officer Vincent Muto and other officers went to minor's residence in Visalia to perform a probation search and because they suspected his involvement in the assaults on Miguel and Mary. Minor was not present at the residence. During the search, Visalia Police Officer Art Alvarez found what appeared to be similar or the same clothing that minor wore on the date of the assault.

*Count 3*

On August 23, 2019, Visalia Police Officer Ryan Park was on patrol in his vehicle with his canine. He was called to assist in the arrest of minor near the Visalia Mall. Park saw minor and exited his car to contact him. Minor ran. Witnesses directed Park to minor. Park called to minor to show himself over the patrol vehicle's PA system. Minor did not show himself. Park and his canine eventually found minor hiding in bushes

behind a nearby residence.  The canine bit minor and held him.  Park took minor into custody and had him transported to the hospital.

Park contacted minor at the hospital.  Minor told Park he "was lucky it was the end of [his] career.  He told [Park] he was going to kill [Park's] dog.  He said he ran because he did not want to go to jail.  He said he was pending robbery and firearms charges and an incident at Wal-Mart."

*Count 4*

On February 13, at about 2:30 p.m., Robert was walking near a mall in Visalia on his way to a restaurant.  After he passed a group of three men, the first man grabbed him from behind; the second man went through his right pants pockets; and the third man—minor—took his cell phone from his left pants pocket.  The robbery took less than five minutes.  Robert attempted to pursue the men but the first man, who he described as muscular, threatened to " 'knock [him] out.' "  The three men then moved away and jumped over a brick wall.

Robert reported the robbery to mall security and made a statement to the police.  Robert was certain that minor was the person who had taken his cell phone.  He recognized minor because he had a distinctive hairstyle.

**The Disposition Hearing**

On March 26, the juvenile court held a disposition hearing after having reviewed the report of the probation officer, recommending minor be committed to DJJ.  Minor's counsel argued minor should not be committed to DJJ because he had been getting better grades in school, had good attendance at school, had no behavioral issues reported that semester, and had gotten a part-time job.

The juvenile court committed minor to DJJ and explained the reasoning for its disposition:

> "[I]n looking at the probation report, [minor] had 12 commitments since he started appearing before the Court.  He's been before the Court

8.

12 times and we've tried to deal with his situation on 12 different occasions.

"He has 15 felonies, 10 misdemeanors, three violations of probation. Two of the felonies are robberies, five are first degree residential burglaries, two of which involve a person in the home. And then he has one assault with a deadly weapon that resulted with great bodily injury.

"He has been committed to the mid term program three times, has served 1,143 days in custody. He's been a ward of the court for six years. And in that period of time I think we have made a great effort to rehabilitate [minor], and at every step he's failed to comply with that. [¶] … [¶]

"He continues to engage in serious and violent behaviors. This last incident was extremely serious. He basically knocked a young lady's tooth out with a punch to the mouth. I remember looking at the photograph where she suffered a total laceration of her lip and injury to her teeth. And it's just—which is a senseless incident, and that's the second robbery.

"He had a previous robbery. And I think it's gotten to the point where even though it is true that he was doing okay in school, his delinquent history is just very poor—very, very poor with a lot of efforts to rehabilitate and he's failed to comply.

"I think the recommendation of the probation officer is appropriate. Every effort has been made to address his delinquent behavior at the local level. As I said before, he served 1,143 days in custody with three prior custodial commitments. Instead of getting better, they're getting worse."

## DISCUSSION

Minor contends that the juvenile court abused its discretion in committing him to DJJ because "there was insufficient evidence presented at the disposition hearing to support a[ ] finding that [either (1)] he would benefit from a commitment to the DJJ" or (2) less restrictive alternatives would likely be inappropriate or ineffective. Minor further contends that the DJJ commitment was error because that disposition was imposed "purely for the purpose of punishment for his past and current delinquent conduct" rather than to serve a rehabilitative purpose. The People disagree, as do we.

We review a juvenile court's commitment decision for abuse of discretion. (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1080 (*A.R.*).) In reviewing a decision for abuse of

9.

discretion, we make all reasonable inferences in support of the trial court's determination. (*Ibid.*) " 'A DJJ commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to minor from the commitment and less restrictive alternatives would be ineffective or inappropriate.' " (*Ibid.*)

" 'Although the DJJ is normally a placement of last resort, there is no absolute rule that a DJJ commitment cannot be ordered unless less restrictive placements have been attempted.' " (*A.R.*, *supra*, 24 Cal.App.5th at pp. 1080–1081; *In re Carlos J.* (2018) 22 Cal.App.5th 1, 6 ["A juvenile court may properly consider 'a restrictive commitment as a means of protecting the public safety.' "].) "A juvenile court must determine if the record supports a finding that it is *probable* minor will benefit from being committed to DJJ." (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486.) There is no requirement that the court expressly find exactly *how* a minor will benefit from the commitment. (*Ibid.*) Nor must the juvenile court expressly state on the record its reasons for rejecting less restrictive placements. (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1159.) But the record must contain some evidence that the court concluded DJJ placement would benefit the minor and appropriately considered and rejected reasonable alternative placements. (*A.R.*, *supra*, 24 Cal.App.5th at pp. 1080–1081; *Nicole H.*, *supra*, 244 Cal.App.4th at p. 1159; *Jonathan T.*, *supra*, 166 Cal.App.4th at p. 486.)

In reviewing a commitment determination, we remember that "the primary goal behind maintaining separate courts and procedures for adults and minors is to ensure that juvenile offenders who have not yet become hardened criminals receive treatment and rehabilitation." (*In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542.) That goal is reflected in the mandate that juvenile courts consider "the protection of the public as well as the rehabilitation of minor" in reaching a disposition. (*Ibid.*) In reaching a disposition, a juvenile court must "consider, in addition to other relevant and material evidence, (1) the age of minor, (2) the circumstances and gravity of the offense committed by minor, and (3) minor's previous delinquent history." (Welf. & Inst. Code, § 725.5.) The

court is required to "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.)

First, substantial evidence supported the juvenile court's conclusion that less restrictive alternative placements would be ineffective to rehabilitate minor.

Minor contends the juvenile court could have placed minor in a less restrictive placement that provided effective education and mental health support. He directs us to evidence that he suggests shows he may have unmet educational needs and untreated mental health issues. Specifically, in June 2014, to assist the juvenile court in coming to a disposition on the first petition, a psychological evaluation of minor was conducted. That evaluation indicated that minor had been treated for anger and depression issues while in custody, showed "deficits in cognition," performed spelling, reading, and arithmetic below his grade level, and suffered from conduct disorder and adjustment disorder with depressed mood. Among other recommendations, the mental health professional recommended an "Individual Education Plan" (IEP) be developed for minor and that he be evaluated for special education placement. He now contends that those needs were never met in the nearly six years since his original petition, as shown by the absence of any evidence in the record that an IEP was developed for him or that he was evaluated for special education services. Also, while he acknowledges that he was ordered to participate in counseling, he suggests that counseling with "specific definition of the issues that needed to be addressed" remained an untested avenue to pursue his rehabilitation rather than DJJ commitment. We disagree with minor's assessment.

Before disposition hearings, the juvenile court was provided with social study reports prepared by the probation department that summarized minor's educational performance, any known ongoing mental health issues, and performance at counseling sessions. Those reports did not reflect that minor had a learning disability, an intellectual disability, or that he was consistently academically underperforming in school. In fact, in

11.

the most recent report, the probation officer noted that minor had "earned three As, four Bs and two Cs in the fall semester of 2020" and had good attendance. As of February 2020, minor had a cumulative grade point average of 2.34. The evidence did not indicate minor was academically underperforming or in need of additional academic support.

Further, at every disposition, as a term of probation, minor was ordered to participate in at least one form of counseling, including alcohol and drug counseling, family and individual counseling, and anger management programs. Minor did not consistently attend the ordered counseling. Minor was also afforded opportunities to participate in the mental health services available in the Tulare County midterm program. As the probation officer noted in his report, "minor ha[d] exhausted all services available to him at the local level." The counseling available to minor through the probation department and the Tulare County midterm program did not result in reformation of minor.

Based on that record, we must reject minor's arguments that the evidence was insufficient to support the juvenile court's finding that less restrictive placements— including those that may have included additional mental health or education services— would have been ineffective to support minor's rehabilitation. Even when performing at an average level or above in school and receiving mental health services on probation and in the Tulare County midterm program, minor continued to reoffend.

Second, the record also contains sufficient evidence to support the juvenile court's finding that a DJJ commitment would benefit minor. Minor argues that because "[h]e had been incarcerated for 1,143 days …, which apparently had no effect on his rehabilitation[,] [t]here simply was no evidence … that another 22 years and two months of incarceration … would make any difference whatsoever." On that basis, he concludes "the only reasonable conclusion is [he] was committed to DJJ for the sole purpose of punishment for his cumulative indiscretions."

For largely the same reasons that a less-restrictive placement would not likely be effective, it is probable that a DJJ placement would benefit minor. Minor exhausted the treatment options available locally. On the other hand, DJJ had additional programs available, including "Aggression Interruption Training (ten week cognitive behavioral intervention to improve social skills and control anger)[,] Counter Point (thirty-three session cognitive behavioral program with a goal to reduce the risk o[f] re-offending)[,] and Cognitive Behavioral Interventions for Substance Abuse (thirty-nine session program to teach participants strategies for avoiding substance abuse). As the probation officer also opined in his recommendation, with which the trial court agreed, a longer period of detention than is available in local commitments was needed in order to address minor's criminogenic needs and "to fully address [minor's] recurring aggressive behavior."

The juvenile court's finding that minor would benefit from a DJJ commitment was supported by sufficient evidence.

Third, minor's placement at DJJ was not "solely based on retribution," as minor argues. Beyond the unavailability of effective less-restrictive alternatives and the benefit to minor, the juvenile court also considered minor's age, the violent circumstances of the offenses, and minor's history of offending in coming to its DJJ commitment determination. All of those considerations supported the trial court's determination committing minor to DJJ.

The juvenile court did not abuse its discretion in committing minor to DJJ.

## DISPOSITION

The order is affirmed.

13.