Filed 3/16/22  In re C.T. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re C.T., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.T.,<br><br>Defendant and Appellant. | F083115<br><br>(Super. Ct. No. 21JL-00040-A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from an order of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.[†]

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Levy, J. and DeSantos, J.

[†]    Judge Ruben A. Villalobos of Stanislaus County presided over the jurisdiction hearing.  Judge Mark V. Bacciarini of Merced County presided over the disposition hearing.

Minor, C.T., appeals from a disposition order adjudging him a ward of the juvenile court and committing him to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF).[1]  On appeal, minor argues that the juvenile court abused its discretion in committing him to the DJF because insufficient evidence supported the court's conclusions that defendant would probably benefit from a DJF placement and that no less restrictive alternative placement was suitable.  The People disagree.  We vacate the disposition and remand for further proceedings.

## PROCEDURAL SUMMARY

On January 15, 2021,[2] the Stanislaus County District Attorney filed a juvenile wardship petition (Welf. & Inst. Code, § 602, subd. (a))[3] alleging minor committed attempted murder without premeditation (Pen. Code, §§ 187, subd. (a), 664; count 1), assault with a firearm (Pen. Code, § 245, subd. (a)(2); count 2), possession of a concealable firearm (Pen. Code, § 29610; count 3), and misdemeanor possession of live ammunition by a minor (Pen. Code, § 29650; count 4).  As to count 1, the petition further

---

[1]    On May 14, 2021, the Governor signed into law Senate Bill No. 92 (2021–2022 Reg. Sess.), which announced the closure of the Division of Juvenile Justice, encompassing DJF, and established as its successor the Office of Youth and Community Restoration, within the state's Health and Human Services Agency.  (Stats. 2021, ch. 18, § 12; see § 736.5, subd. (e) [requiring closure of the Department of Juvenile Justice by June 30, 2023].)  Minors facing new commitments may now be committed to local "secure youth treatment facilit[ies]" in lieu of DJF.  (§ 875, subd. (c)(1); but see § 736.5, subd. (c) [creating a limited exception for DJF placement].)  However, because minor was committed to DJF prior to July 1, 2021, he remains in DJF custody until he is discharged, released or otherwise moved pursuant to law, or until final closure of the Division of Juvenile Justice.  (§ 736.5, subd. (d).)  We therefore continue to refer to his commitment as a commitment to DJF.

[2]    All further dates refer to the year 2021 unless otherwise stated.

[3]    All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2.

alleged that minor personally inflicted great bodily harm (Pen. Code, § 12022.7, subd. (a)).[4]

On April 8, minor admitted the truth of count 1 and the related enhancement. The remaining counts were dismissed in the interest of justice, on the People's motion. The Stanislaus County Superior Court then ordered jurisdiction over the matter transferred to Merced County for disposition.

On April 15, the Merced County Superior Court accepted jurisdiction over the matter.

On May 20, minor was adjudged a ward of the juvenile court and committed to DJF for a maximum period of confinement of 10 years.

On May 27, the juvenile court advised minor of his right to appeal.

On July 27, minor filed a notice of appeal.

## FACTUAL SUMMARY[5]

On January 13, at approximately 11:23 p.m. Modesto Police Sergeant Kimes responded to a 911 call reporting a shooting near an apartment complex. He arrived at the scene to find Jeremiah J. on the ground with an apparent gunshot wound to his abdomen. Jeremiah reported that the person who shot him was wearing all black. Officers noted that Jeremiah had a Norteño gang-related tattoo on his stomach.

A Modesto police officer spoke to a neighbor, A.V., who reported that at about 11:30 p.m., she heard two gunshots, approximately five to 10 seconds apart. The neighbor did not hear any voices prior to the gunshots. Several other neighbors were also

---

[4]     The petition was amended by interlineation on April 8, to allege that the attempted murder charged in count 1 was unpremeditated and replace the firearm enhancement that was originally alleged on that count (Pen. Code, § 12022.53, subd. (c)) with a great bodily injury enhancement (Pen. Code, § 12022.7, subd. (a)).

[5]     Minor stipulated that the January 15 detention report prepared by the probation officer provided a factual basis for his admission. Our factual summary is therefore drawn from that report. The probation officer's predisposition report repeats substantially the same factual summary.

3.

interviewed. Another neighbor, T.S., reported having seen two men standing at a street corner and then hearing a " 'pop.' " T.S. then heard one of the men say that he had been shot. The apparent shooter was wearing all black clothing and a baseball cap or skull cap, stood approximately five feet nine inches tall, and weighed 180 to 200 pounds or "slightly thinner."

A different Modesto police officer was tasked with creating a perimeter around the area where the shooting was believed to have taken place. In doing so, the officer found minor standing in a parking lot nearby. Minor matched the description of the shooter. Minor told the officer that he was there visiting his grandmother. The officer directed him to return to his grandmother's apartment. Minor walked toward one of the rear units of the complex, told the officer that he was waiting for a rideshare driver to arrive, then crossed the street. The officer detained minor for a curfew violation. Officers later determined that "no one at the complex knew" minor. Minor's mother was called and she reported not having known that he was in Modesto.

Minor later reported Norteño gang association.

## DISCUSSION

Minor contends the juvenile court abused its discretion in committing him to DJF because no evidence was before it that indicated whether the placement would be of probable benefit to minor or whether suitable less-restrictive alternatives were available. We agree.

### A. Additional Background

At the disposition hearing on May 20, the juvenile court invited the parties to comment on the report and recommendation of the probation officer. Minor's counsel made the following statement:

> "[I]t's a sad situation that we find ourselves in today. Hopefully, [minor] can learn from this, and he is going to be going to the Department of Juvenile Facilities, and hopefully he can turn his life around and not continue on the path that he seems to be going down.

4.

"I know that he did express remorse in his statement to Probation, so hopefully that's the beginning of changing. And I'll submit on that."

The juvenile court made the following comments in reaching its disposition:

"Okay. Well, [minor], I don't believe that any of us really disagree with your attorney's statements to the court. And I would suggest to you that we all agree that we hope this is the last time we see you in the criminal justice system. This a very, very, serious offense that has ruined a lot of lives, including the two the people who are with your attorney.

"So I want you to take some time to reflect on this, take advantage of any opportunities that are presented to you to better yourself. Go to school, learn some skills, so that when you are returned to us, you can be a productive member of society instead of engaging in this destructive behavior. Not only for yourself, but for all the other people I mentioned."

After confirming minor's date of birth, address, and parentage, the juvenile court reached the following conclusions:

"I'll find that he was under the age of eighteen at the time of the commission of the offense. And the mental and physical conditions and qualifications of this youth render it possible that he will benefit from reformatory discipline or other treatment provided by the [DJF]. He's therefore committed to the [DJF] for acceptance."

At the end of its discussion, the juvenile court noted that it had "read and considered Probation's report and recommendation and concur[red] with it." The probation officer's predisposition report included summaries of: the facts of the offense; the seriousness and harm cause by minor's offense; minor's apparent contrition regarding the offense; minor's absence of prior serious offending behavior; minor's home life and educational history; minor's history of drug and alcohol use; the minor's compliance in custody—he had refused programming on six occasions; and the probation officer's opinion that "due to the nature of the offense, it appears … minor requires extensive services that will be best provided to him while confined for an extended period."

**B.  Analysis**

We review a juvenile court's commitment decision for abuse of discretion. (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1080 (*A.R.*).) In reviewing a decision for abuse of

discretion, we make all reasonable inferences in support of the trial court's determination. (*Ibid.*) " 'A DJJ commitment is not an abuse of discretion where the evidence demonstrates a probable benefit to minor from the commitment and less restrictive alternatives would be ineffective or inappropriate.' " (*Ibid.*)

" 'Although the DJJ is normally a placement of last resort, there is no absolute rule that a DJJ commitment cannot be ordered unless less restrictive placements have been attempted.' " (*A.R.*, *supra*, 24 Cal.App.5th at pp. 1080–1081; accord, *In re Eddie M.* (2003) 31 Cal.4th 480, 507 (*Eddie M.*); *In re Carlos J.* (2018) 22 Cal.App.5th 1, 6.) ["A juvenile court may properly consider 'a restrictive commitment as a means of protecting the public safety.' "].) "A juvenile court must determine if the record supports a finding that it is *probable* the minor will benefit from being committed to DJJ." (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486.) There is no requirement that the court expressly find exactly *how* a minor will benefit from the commitment. (*Ibid.*) Nor must the juvenile court expressly state on the record its reasons for rejecting less restrictive placements. (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1159.) But the record must contain some evidence that the court concluded DJJ placement would benefit the minor and appropriately considered and rejected reasonable alternative placements. (*A.R.*, *supra*, 24 Cal.App.5th at pp. 1080–1081; *Nicole H.*, *supra*, 244 Cal.App.4th at p. 1159; *Jonathan T.*, *supra*, 166 Cal.App.4th at p. 486.)

In reviewing a commitment determination, we remember that " 'the primary goal behind maintaining separate courts and procedures for adults and minors is to ensure that juvenile offenders who have not yet become hardened criminals receive treatment and rehabilitation.' " (*In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542.) That goal is reflected in the mandate that juvenile courts consider "the protection of the public as well as the rehabilitation of the minor" in reaching a disposition. (*Ibid.*) The court is required to "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care." (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.)

Here, neither the probation officer's predisposition report (which the juvenile court adopted) nor the juvenile court discussed minor's needs, whether alternative placement options were available or reasonable, the specific services available at DJF, or whether those services would be of probable benefit to minor. The People nevertheless argue that the trial court's commitment decision was not an abuse of discretion. We disagree.

With regard to the probable benefit of a DJF commitment, the People direct us to *Eddie M.* for an explanation of the programs and services available at DJF. (E.g., *Eddie M.*, *supra*, 31 Cal.4th at p. 507.) However, *Eddie M.* does not provide any outline of services or programs available at DJF.[6] (*Cf. J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 721 [describing some of the programming then-available through the Division of Juvenile Justice].) They then suggest that the trial court concluded that minor would have benefitted from the services and programs identified by other courts. However, it is not enough to recognize that DJF has services that can benefit minors in general. A juvenile court must consider the particular minor's needs against the programs and services actually available at DJF in order to determine whether DJF placement would be of probable benefit. (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 10.) A juvenile court "could not make that finding, and this court cannot review the adequacy of the evidence supporting the finding, without evidence in the record of the programs at the DJF expected to be of benefit to appellant." (*Ibid*.) Because the record does not contain evidence of minor's needs or the programs and services at DJF that might have benefitted minor and served those needs, we cannot assess whether the juvenile court properly exercised its discretion in concluding that a DJF commitment would be of

---

**6** Moreover, we cannot assume that the services available at the California Youth Authority when *Eddie M.*, *supra*, 31 Cal.4th at page 507, was issued in 2003, are the services that remain available at DJF today or that the juvenile court considered any such services in reaching its disposition.

probable benefit to minor.  For that reason, we must vacate the disposition and remand to the juvenile court for further dispositional proceedings.

Further, we note that the record contains no evidence that the juvenile court considered any less restrictive alternative placements.  The probation officer's predisposition report—the recommendations of which the juvenile court adopted as its own—made no mention of alternative placements and the court discussed no alternative placements on the record.  The predisposition report noted merely that "[d]ue to the nature of the offense, it appears the minor requires extensive services that will be best provided to him while confined for an extended period."  The absence of evidence of consideration of alternative placements also requires that the disposition be vacated.  (See *A.R.*, *supra*, 24 Cal.App.5th at pp. 1080–1081.)

We express no opinion regarding an appropriate disposition upon remand.

## **<u>DISPOSITION</u>**

The disposition order is vacated, and the matter is remanded to the juvenile court for further proceedings.