Filed 8/14/23  In re C.A. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| In re C.A., a Person Coming Under the Juvenile Court Law. | C097069 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>C.A.,<br><br>        Defendant and Appellant. | (Super. Ct. No. 21JU-000093) |

Minor C.A., now 17 years old, was adjudged a ward of the court.  He contends the juvenile court abused its discretion in committing him to the County of Tehama Secure Youth Treatment Facility (SYTF), rather than a less restrictive placement.  Because, on this record, we cannot assess whether the juvenile court properly exercised its discretion, we will remand the matter for further proceedings.

1

## BACKGROUND[1]

In December 2021, a multicount petition was filed against the minor alleging the following: rape of a child 14 years or older (Pen. Code, § 261, subd. (a)(2)), two counts aiding or abetting a rape (Pen. Code, § 264.1, subd. (b)(2)), penetration by a foreign object (Pen. Code, § 289, subd. (a)(1)(C)), possession of a handgun by a minor (Pen. Code, § 29610), and carrying a loaded firearm in public (Pen. Code, § 25850, subd. (a)). Relative to the sexual assault charges, the People also alleged the minor used a firearm during the commission of his crimes. (Pen. Code, § 12022.5.) After a contested adjudication hearing, the juvenile court dismissed the charge that the minor carried a loaded firearm in public and otherwise sustained the petition.

On August 26, 2022, the probation department (Department) filed a disposition report (report) indicating this was the minor's first offense, he lived with both parents and his siblings, and regularly attended school. The minor had no gang affiliations and no history of drug or alcohol abuse. After his arrest, while he was in custody, the minor was "well behaved." The staff at juvenile hall described him as a "model juvenile [who] does not create problems." Neither he nor his parents believed he raped the victim, only that he made a bad choice.

The Department recommended committing the minor to the SYTF:

"Although the minor has no prior record, his sustained allegations in this matter are both egregious and troubling, and he needs to be held accountable. It is apparent the minor takes minimal, if any, accountability for his actions and does not appear remorseful, instead thinking solely of how the situation has impacted him personally.

---

[1] Since the details of the minor's offenses are not relevant to resolution of the issue on appeal, we omit them. Appellant does not dispute that his actions were severe within the meaning of Welfare and Institutions Code section 875, subdivision (a)(3)(A) ("no question" adjudicated offenses were severe).

"Wardship and probation appear necessary and are recommended in this matter. Furthermore, a lengthy commitment in the [SYTF] also appears appropriate and is recommended to ensure the minor is provided the appropriate rehabilitation services.

"The standard terms of probation including search and seizure and drug and alcohol testing are recommended. Furthermore, the minor should be required to participate in any counseling deemed necessary by the [Department], including sexual offender counseling and treatment."

No detail was provided with respect to what counseling and treatment might be available to the minor.

The minor filed a motion for an alternative disposition contending he was entitled to an "individualized disposition" addressing whether an alternative less restrictive disposition was available to the court pursuant to Welfare and Institutions Code section 875, subdivision (a)(3)(D).

At the disposition hearing on September 22, 2022, the People argued the minor should be committed to the SYTF, as recommended by the Department. The People presented no witnesses. The prosecutor described the minor's crimes as "egregious," stating he should be placed "in a locked facility where [he] can't do that again to anybody else." Such a disposition, the prosecutor argued, would not only hold the minor accountable but protect the public as well.

In closing argument, the prosecutor asked the court to commit the minor to the SYTF because it was "the best way of addressing the gravity of the allegations that were held to be true here, addressing the safety of the victim and the community, and most importantly, addressing the rehabilitative actions necessary for the minor to proceed in life in the best manner possible, that the [SYTF] commitment for the term of four years that's possible here is the most appropriate."

In response to the minor's motion for alternative placement, the prosecutor said the minor could not get the same programming in an alternative placement that he would

3

receive in the SYTF where "the minor will be provided with an individual rehabilitation plan. . . . There's a team appointed to address both the minor and his family."

"It will structure programming specifically to the offense committed by the minor. The services specific to reintegration into society[,] which will be provided to him[,] will include job training, college courses, and one-on-one counseling. . . . He gets a full, personalized treatment team specifically to address what actions will benefit him in the long run upon completing the programming." The People offered no evidence or specifics about what services might be available to accomplish these goals.

The juvenile court found the minor presented a risk to the community, was the "primary offender" in the rape, and demonstrated no remorse for his crimes. The court also found the harm to the victim was "extreme," saying it would "affect her for the rest of her life. For the rest of her life." The court noted it was "very familiar with all of the treatment options" observing that placement with the minor's parents was not an option because they saw nothing wrong with the minor's conduct, and placement with them "would just reinforce his refusal to acknowledge his behavior."

Finding this to be a "very severe offense," the court concluded without further explanation that "[o]ther less restrictive dispositions are also unsuitable." The court thus committed the minor to the SYTF, finding it was "the only alternative for the minor to hopefully come to understand and accept what he did so he can rehabilitate himself. And the programs in the [SYTF], especially MRT,[2] will help him understand the seriousness of his conduct. And it's the best option for [his] success." The court adopted the report and all its terms, incorporating them into its decision and judgment, setting the maximum term of confinement at 17 years 8 months.

---

[2] The juvenile court referred to the "MRT" program as one that would be particularly beneficial to the minor; however, there is no evidence in the record describing the program let alone how it would benefit this minor in particular.

The minor filed a timely notice of appeal on September 28, 2022, and after the parties' multiple requests to continue the briefing schedule, the case was fully briefed on July 12, 2023.

DISCUSSION

In recent years, the Legislature has overhauled juvenile wardship law by closing the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ) and transferring jurisdiction over youthful offenders to counties, with the stated purpose of ensuring minors are closer to their families and communities and receive age-appropriate treatment. (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 907; *In re T.O.* (2022) 84 Cal.App.5th 252, 262-263; Welf. & Inst. Code, § 736.5; Sen. Bill No. 823 (2019-2020 Reg. Sess.); Stats. 2020, ch. 337, § 1.)[3]

A further change to the juvenile law, effective May 14, 2021, established requirements for counties' secure youth treatment facilities. (§ 875, added by Stats. 2021 ch. 18, § 12 & amended by Stats. 2022, ch. 58, § 41.) Among them, such a facility must "provide appropriate programming, treatment, and education" for wards; it may be either a stand-alone facility or a unit or portion of an existing county juvenile facility "that is configured and programmed to serve" the youth committed to it; and it must comply with applicable regulatory standards. (§ 875, subd. (g).) Among the general standards applicable when the minor was committed, each youth must have the opportunity for at least one hour of daily programming, including "trauma focused, cognitive, evidence-based, best practice interventions that are culturally relevant and linguistically appropriate, or pro-social interventions and activities designed to reduce recidivism," based on the youth's individual needs. (Cal. Code Regs., tit. 15, § 1371, subd. (a).) The programs may include, among other things: cognitive behavior interventions;

---

[3] Further undesignated statutory references are to the Welfare and Institutions Code.

management of stress and trauma; anger management; conflict resolution; trauma-related interventions; victim awareness; self-improvement; art, creative writing, or self-expression; restorative justice or civil engagement; and career and leadership opportunities. (*Ibid.*)

Section 875 also sets criteria that must be satisfied before a ward is committed to a secure youth treatment facility. Before committing a youth to a secure facility, the court must make a finding that no less restrictive alternative disposition is suitable. (§ 875, subd. (a)(3).) In making this determination, the court must consider all relevant and material evidence, including the recommendations of counsel, the probation department, and anyone else designated to advise on the appropriate disposition, and it must base its determination on several additional criteria: the severity of the most recent offense or offenses; the ward's previous delinquent history; "[w]hether the programming, treatment, and education offered and provided in a secure youth treatment facility is appropriate to meet the treatment and security needs of the ward"; whether a less restrictive disposition would meet the goals of rehabilitation and public safety; and the ward's age, maturity, mental and emotional health, sexual orientation, gender identity and expression, and disabilities or special needs. (§ 875, subd. (a)(3).)

A decision to commit a minor must be supported by evidence of probable benefit to the minor, as well as evidence that less restrictive alternatives would be ineffective or inappropriate. (See *In re Miguel C., supra*, 69 Cal.App.5th at p. 906 [DJJ commitment]; *In re Teofilo A.* (1989) 210 Cal.App.3d 571, 576.) This review "is particularly fact intensive and requires a fully informed analysis by the juvenile court of the minor's needs and the programs' services." (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1291.)

We review a juvenile court's placement decision for abuse of discretion. (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154.) A court abuses its discretion if its factual findings find no support in the evidence. (*Ibid.*) In our review, we examine the record in light of the purposes of the juvenile court law. (*Ibid.*)

The minor contends that, under these standards, the juvenile court abused its discretion in committing him to the SYTF. On this record, we cannot assess whether the juvenile court properly exercised its discretion. Neither the report, which the juvenile court adopted, nor the juvenile court discussed the minor's specific needs, whether alternative placement options were available or reasonable, the specific services available at the SYTF, or whether those services would be of probable benefit to the minor.

It is not enough to recognize that a secure youth treatment facility has services that can benefit minors in general. A juvenile court must consider the particular minor's needs against the programs and services actually available at a secure youth treatment facility in order to determine whether placement would be of probable benefit. (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 10.) A juvenile court "could not make that finding, and this court cannot review the adequacy of the evidence supporting the finding, without evidence in the record of the programs at the [SYTF] expected to be of benefit to appellant." (*Ibid.*)

Because the record does not contain any evidence of the minor's needs or the programs and services at the SYTF that might benefit him and serve those needs, we cannot assess whether the juvenile court properly exercised its discretion in concluding that a secure youth treatment facility commitment would be of probable benefit to the minor. For that reason, we must vacate the disposition and remand to the juvenile court for further dispositional proceedings.

We note the report, which the juvenile court adopted as its own, made no mention of alternative placements. The predisposition report stated merely that "a lengthy commitment in the [SYTF] . . . appears appropriate and is recommended to ensure the minor is provided the appropriate rehabilitation services." Further, the absence of evidence of consideration of alternative placements also requires that the disposition be vacated. (See *In re A.R.* (2018) 24 Cal.App.5th 1076, 1080-1081.)

We express no opinion regarding an appropriate disposition upon remand.

7

## DISPOSITION

The juvenile court's order committing appellant to the SYTF is reversed, and the matter is remanded for a new disposition hearing.

/s/
WISEMAN, J.*

We concur:

/s/
MAURO, Acting P. J.

/s/
MESIWALA, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.