Filed 5/19/25  In re A.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> A.M., <br><br> Defendant and Appellant. | D083816 <br><br> (Super. Ct. No. JJL000946) |

APPEAL from a judgment of the Superior Court of Imperial County, William D. Quan, Judge.  Affirmed.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Evan Stele, Deputy Attorneys General, for Plaintiff and Respondent.

A.M., a minor, appeals from a disposition order of the juvenile court committing him to a secure youth treatment facility (SYTF) after he admitted

1

committing a robbery.  On appeal, he contends the juvenile court abused its discretion when it ordered him to be committed to a SYTF without giving due consideration to an available less restrictive alternative, specifically formal probation with electronic monitoring.  We conclude the court's ruling was not an abuse of discretion.  Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Robbery*

In November 2023, 14-year-old A.M. stole two cases of beer from a convenience store in Riverside County while on probation for a robbery committed in February 2023.  When confronted by the store owner, A.M. allegedly pointed a chrome handgun at the victim before getting in a vehicle and fleeing the scene.  A.M. was arrested on December 5, 2023 and a Welfare and Institutions Code section 602[1] petition was filed the next day in Riverside County Superior Court.  The petition alleged A.M. committed robbery (Pen. Code, § 211), theft (Pen. Code, § 487), and misdemeanor shoplifting (Pen. Code, § 459.5).

In December 2023, A.M. admitted the November 2023 robbery.  The People dismissed the theft and misdemeanor shoplifting charges.  The court then granted A.M.'s request to transfer the case from Riverside County to Imperial County.

B. *Disposition Report*

The juvenile court in Imperial County set a disposition hearing for January 2024.  Before the hearing, A.M.'s probation officer filed a disposition report.  The report included the following information about the current offense: A.M. admitted to committing a "beer run," denied having a firearm,

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code unless otherwise specified.

did not display any guilt or remorse, attempted to shift the blame to the store owner, and avoided answering questions about the incident. The report further provided that A.M. was enrolled in independent studies, was not a victim of abuse or general neglect, was behaving in the programs at the Imperial County Juvenile Hall where he was being housed, and had initially adjusted well to formal probation for the prior robbery. The probation officer expressed concern, however, that the instant offense was a "repeat" of the prior offense for which he was already on probation, indicating that he did not take rehabilitation seriously and could be considered a threat to the community. The probation officer also noted that he had made multiple unsuccessful efforts to contact A.M.'s mother. When he finally reached her, she said that A.M. was a "good kid" who was "negatively influenced by negative older peers," that "the entire incident was not his fault," and that "the incident was just a 'beer run' and not a robbery."

The probation officer recommended A.M. be declared a ward of the court under section 602 and placed in the SYTF located in Imperial County Juvenile Hall. According to the report, the services A.M. needed were not available near his home, and the unavailability of A.M.'s mother meant he would not have reliable transportation to the necessary services. The officer believed all these factors indicated A.M. would commit another related offense.

C. *Initial Disposition Hearing*

At an initial disposition hearing, A.M. raised several concerns with the disposition report. He argued, as relevant here, that there were possible due process violations because the recommendation was based on A.M.'s area of residence and there was no investigation into whether A.M. suffered from any mental health issues. A.M. argued that a supplemental report was

3

required to address these issues, and he requested a continuance.  The People did not oppose the continuance and agreed that a supplemental report was necessary.

The court continued the disposition hearing and ordered a supplemental report from probation that focused on any childhood trauma, mental health issues, learning disabilities, and any other factors that may mitigate A.M.'s actions.

D.  *First Supplemental Report*

A.M.'s probation officer filed a supplemental report before the continued disposition hearing, again recommending that A.M. be committed to a SYTF.  A.M. and his mother both indicated there was no childhood trauma, learning disability, or abuse; neither believed A.M. required behavioral health services but were open to the idea; and the staff of A.M.'s high school described him as "bright and intelligent."  A.M.'s mother reported she was a farm laborer, which is why she had been unavailable, but she promised to try to keep A.M. under control.  A.M.'s mother also mentioned she hired an attorney to get A.M. readmitted to his school and planned to file a restraining order against the others involved in the instant offense should A.M. be released from custody.  At the continued disposition hearing, the court noted that while it was in receipt of the supplemental report, it had not received an additional memo A.M.'s probation officer had filed the previous day.  A.M.'s counsel had also not received the memo.  As a result, A.M. requested another continuance and indicated he expected the disposition to become a contested matter.

E.  *Contested Disposition Hearing*

The court held the contested disposition hearing in March 2024.  The probation officer testified that A.M.'s mother told him she was unavailable

because she works in the fields and her phone had been disconnected or changed approximately four times since the initiation of the case. According to the probation officer, A.M. was known to have a gang affiliation from a previous case. While A.M. had been in juvenile hall, there were incident reports about him and a rival gang member tagging and making graffiti threats against each other. In a recorded conversation with a person named Fargo, A.M. said the "whip" (meaning firearm) was with his mother and he would be able to retrieve it when he was released. The officer did not investigate any other alternatives to the SYTF commitment, including electronic monitoring.

A.M.'s mother testified that she attempted to communicate with the probation officer on ten separate occasions since December of 2023 and only reached him once. She indicated she was willing to move to an area with more readily available services, but she was unable to do so at that time.

A.M. testified that he would comply with all required terms of probation or other services if offered. A.M. said he was never a gang member, but he associated with people in a gang on one occasion. A.M. stated that despite the negative influences in his life, he would focus on school and try to graduate. He explained that he had been on electronic monitoring for a month, but he was not on electronic monitoring at the time of the most recent offense. On cross-examination, he denied using a gun during the robbery and admitted having a nickname given to him by friend who was associated with a gang.

During closing arguments, counsel for A.M. argued that he had an uncle and grandparent at home who could supervise him, and that he had successfully completed electronic monitoring during his prior probation

5

period.  Despite this, the probation officer failed to explore electronic monitoring as an option for the current offense.

The court acknowledged that the probation officer did not provide further information regarding alternatives to confinement to the SYTF.  The court continued the disposition hearing again, ordering that the probation officer submit a second supplemental report that provided information on alternatives to confinement.

F. *Second Supplemental Report*

The probation officer stated in his second supplemental report that A.M. had expressed remorse for committing the instant offense because he recently learned the victim was his aunt's ex-boyfriend.  A.M. requested that the court consider electronic monitoring, emphasizing that he did not want to spend a large portion of his teenage years in custody and that his priority was to graduate from high school and find employment afterwards.

The probation officer also interviewed A.M.'s mother.  She stated that although she works, there was always some form of adult supervision for A.M. at home.  A.M.'s mother promised to "do 'anything and everything in her power'" to raise A.M. appropriately.  "Regarding the instant offense, she advised that the minor is heavily influenced by negative adult peers who she believes 'put him up to it.'  She advised that she cannot stop him from associating with three adults and advised that at least two of them are known gang members."  She was "at a loss as to how to change the minor's criminal behavior patterns and gang associations."

The probation officer's report explored pre-placement services, relative placement, group home placement, and Short-Term Residential Therapeutic Programs (STRTP) as alternatives to confinement.  He found that pre-placement services were not feasible because the closest facilities were

6

approximately 40 minutes from A.M.'s residence. Relative placement was not an option because it appeared that A.M.'s only stable and permanent residence placement option was with his mother. A.M. did not qualify for group home placement, nor did he meet the criteria for an STRTP.

The probation officer reaffirmed his initial recommendation for A.M. to be committed to a SYTF. The report stated that A.M.'s role as the sole actor in the commission of the instant offense and the harm done to the victims qualified him for commitment. Further, although A.M. denied any gang affiliation, it had been established in the prior robbery case and he had also "inadvertently admitted his gang affiliation to the Deputy District Attorney during his cross-examination" in this matter. The probation officer considered A.M. a threat to the community.

G. *Final Hearing and Disposition*

At the final contested disposition hearing, the juvenile court declared A.M. a ward of the court. The court considered the probation officer's report, the supplemental reports, and all evidence presented. The court focused on the fact that the current offense occurred while A.M. was on probation for a previous robbery. The court expressed concern that A.M. was susceptible to peer pressure and that his mother was at a loss as to how to change A.M.'s behavior and associations. The court did not find credible the testimony from A.M.'s mother that she was able to supervise A.M. and that she was unable to reach the probation officer throughout the entire probation period. The court found the probation officer's testimony credible regarding his contact attempts. The court stated that it had considered alternatives to confinement and did not believe electronic monitoring would have prevented A.M. from committing the present offense. It noted that even after being on

7

electronic monitoring for the prior robbery, A.M. "willfully and intentionally went out and committed the second robbery, period."

In sum, the court made the following statement and findings: "The Court did consider the five factors as follows: the severity of the offense, including the youth's role in the offense, the youth's behavior and the harm done to the victims. [¶] The Court has also considered the youth's previous delinquent history, including adequacy and successful previous attempts to rehabilitate the youth, whether the program and treatment and education offered and provided in a secure youth treatment facility is appropriate to meet the needs of the minor child, and whether the goals of rehabilitation and community safety can be met by assigning the youth to an alternative, less restrictive disposition available to the Court, the youth's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs that may have been brought forward affecting the safety or suitability of committing the youth to a term of confinement in a secure youth treatment facility. [¶] Having considered all that, the Court will find that a less restrictive alternative is unsuitable." The court further found under section 726 that an award of custody to A.M.'s parent or legal guardian was not appropriate, because he had tried and failed to reform while on probation, and the return of A.M. to his home would be contrary to his welfare.

The court sentenced A.M. to a baseline term of two years at the SYTF, with a maximum confinement time of five years.

DISCUSSION

A.M. contends the court abused its discretion when it ordered him committed to a SYTF instead of sentencing him to a less restrictive

8

alternative—specifically, formal probation with electronic monitoring. We disagree.

We review a juvenile court's decision to commit a minor to confinement for abuse of discretion. (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 908.) An abuse of discretion occurs when the court's factual findings critical to its decision find no support in the evidence. (*Ibid.*) The appellate court therefore considers whether substantial evidence—meaning evidence reasonable in nature, credible, and of solid value—supports the juvenile court's commitment order in light of the purpose of the juvenile court law. (*Ibid.*; § 202, subd. (b) [a minor "in need of protective services shall receive care, treatment, and guidance consistent with their best interest and the best interest of the public"].) We must indulge all reasonable inferences to support the juvenile court's decision. (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1080.)

A court determining the appropriate disposition of a section 602 case shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense, and (3) the minor's previous delinquent history. (§ 725.5.) If the minor is adjudged a ward under section 602, "the court may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor." (§ 727, subd. (a)(1).) The court has the discretion to place the ward at home, on probation, with or without electronic monitoring, or to order various forms of commitment. (§§ 727, subd. (a)(2)–(3), 730, subd. (a).)

The court also has the discretion to order a juvenile who is 14 years of age or older to be committed to a secure youth treatment facility for a period of confinement if certain criteria are met, including a finding on the record that a less restrictive, alternative disposition for the minor is unsuitable.

9

(§ 875, subd. (a).) The court must base its determination for a less restrictive alternative disposition on the following criteria: "(A) The severity of the offense or offenses for which the ward has been most recently adjudicated, including the ward's role in the offense, the ward's behavior, and harm done to victims. [¶] (B) The ward's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the ward. [¶] (C) Whether the programming, treatment, and education offered and provided in a secure youth treatment facility is appropriate to meet the treatment and security needs of the ward. [¶] (D) Whether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court. [¶] (E) The ward's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing the ward to a term of confinement in a secure youth treatment facility." (§ 875, subd. (a)(3)(A)-(E).)

A.M. argues the court abused its discretion in declining to sentence him to formal probation with electronic monitoring because (1) A.M. was only 14 years old, (2) the current robbery offense was not particularly serious, (3) A.M.'s criminal history did not support a secure commitment, and (4) the goal of rehabilitation and community safety could be met through probation with electronic monitoring. Additionally, A.M. argues the court dismissed his request for probation based on pure speculation that A.M. would have committed the present offense even if he had been on house arrest with electronic monitoring for his prior offense.

We discern no abuse of discretion. The court paid close attention to the possibility of less restrictive available alternatives, and even continued the

10

disposition hearing for a supplemental report on the subject. The court was aware of its duty to consider a less restrictive available alternative and reasonably concluded that such alternatives, including electronic monitoring, were not suitable for A.M. The court expressly stated that it considered the probation report and supplemental reports, the evidence presented by A.M.'s counsel, and the required factors under section 875, subdivision (a)(3)(A) through (E), in reaching its conclusion. When making a finding that a less restrictive alternative disposition is not suitable, the court is not required to first attempt a less restrictive placement before ordering commitment to one that is more restrictive. (See *In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1159.)

Despite his young age, this was not A.M.'s first interaction with the juvenile justice system—he was already on probation for a similar robbery. A.M. denied any gang affiliation, but his gang affiliation was previously established in a separate case and his mother confirmed his association with older gang members and her inability to do anything about it. A.M. was not deterred by his previous punishment, which included probation with electronic monitoring. Instead, A.M. committed a second robbery while on probation for the first. According to the probation officer, he also showed no remorse for committing the offense and minimized it as a "beer run."

A.M. argues the robbery was not a serious crime, but his actions do suggest a troubling pattern of serious criminality and gang influence at a young and impressionable age. The probation officer thus deemed A.M. a "threat to the community."

The court further took into consideration whether probation with electronic monitoring could achieve the goals of rehabilitation and community safety, and it concluded that it would not. The court specifically found that

11

awarding custody to his mother would be detrimental to A.M. because he was previously placed on probation with electronic monitoring and failed to reform. The court did not find A.M.'s mother's testimony entirely credible, including her assertion that she would be able to supervise A.M. at home. Her statement to the probation officer made it clear that she was unable to control A.M.'s behavior or stop him from associating with gang members or others who had a negative influence on him. The court reasonably concluded that returning A.M. to his home would be contrary to his welfare and community safety.

We therefore conclude that the juvenile court based its decision to commit A.M. on the required statutory factors, substantial evidence supported its factual findings, and it did not abuse its discretion in committing A.M. to a SYTF.

DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:


DATO, Acting P. J.


DO, J.

12