Filed 5/20/25  In re R.H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re R.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | D083687 |
| Plaintiff and Respondent, | (Super. Ct. No. J244829) |
| v. | |
| R.H., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Affirmed.

Matthew M. Johnson, under the appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

R.H., a minor, appeals from a disposition order of the juvenile court committing him to a secure youth treatment facility (SYTF) after he admitted to two counts of murder.  R.H. contends the juvenile court abused its discretion when it committed him to an SYTF without giving due consideration to an available less restrictive alternative.  We disagree and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Robbery*

In January 2023, when he was 15 years old, R.H. participated in a robbery that led to the deaths of Jesus Garcia and Nicholas Tiefer.  R.H. arranged to meet with Jesus under the pretense of buying marijuana products from him.  But R.H. and his companion, E.F., intended to rob Jesus and discussed their plans to do so.  In an Instagram conversation, R.H. messaged E.F. saying "yeah g I wanna do that shi" in reference to the robbery.  R.H. also told E.F. he had "the blower still" and would "fill the clip[,]" which law enforcement believed meant R.H. had a handgun.  After R.H. and Jesus agreed on a date, R.H. sent a location to E.F. indicating where he should pick R.H. up.  R.H. then sent another map location to E.F., where they met Jesus and Nicholas around 1:30 p.m.  Surveillance video showed that after Jesus parked his car next to the Lexus driven by E.F., three or four suspects exited the Lexus and opened the rear door of Jesus's car.  Then several gunshots were fired, the suspects got back in the Lexus, and they left the scene.  The evidence indicated there were two shooters.  Jesus and Nicholas died from their gunshot wounds.

R.H. and E.F. were arrested about a month after the robbery and detained at East Mesa Juvenile Detention Facility (East Mesa).  The People

2

filed a Welfare and Institutions Code[1] section 602 petition in February 2023 alleging that R.H. committed two counts of murder in violation of Penal Code section 187. R.H. admitted to both counts.

B. *Disposition Report*

R.H.'s probation officer filed a disposition report in July 2023 recommending that R.H. be committed to an SYTF. The officer noted that R.H. and E.F. planned the robbery, R.H. armed himself, and R.H. was identified as a likely shooter. Although this was R.H.'s first offense, he had been involved in 11 incidents while at East Mesa as of the date of the report, including "mutual fights" and assaults on other youths and a correctional officer. Before the offense, R.H. had been suspended from school multiple times for fighting and smoking marijuana. His psychological evaluation report recommended therapy for his "trauma-related symptoms and associated emotion- and behavior-regulation difficulties." The probation officer noted that while R.H. said he felt "bad" about the victims, he also seemed more concerned about what sentence he would receive.

In his disposition brief, R.H. requested through counsel that he be placed in a youth transition center (YTC) program for no more than 480 days. He contended that a YTC program, which is less restrictive than an SYTF, would afford him the therapy and environment he needs to rehabilitate. He argued that his immaturity and peer influence played a role in the offense, and he referenced adverse childhood experiences from his parents' divorce, bullying at school, and traumatic brain injuries in asking for leniency. He also said he "has been able to avoid more drama than he has engaged in" at East Mesa and noted that he has benefited from mentorship.

---

[1] Further undersigned statutory references are to the Welfare and Institutions Code unless otherwise specified.

The People requested in their disposition brief that R.H. be committed to an SYTF for the maximum term of seven years. The prosecution emphasized that R.H. set up the robbery, offered to plan it, identified Jesus as a target, and lured him to the scene. The People pointed to evidence that R.H. sent Jesus a laughing emoji immediately after the shooting while Jesus and Nicholas were dying from their wounds. The People observed that R.H. also sent messages to E.F. afterwards expressing interest in being part of his gang.

R.H. filed addendums to his brief noting there was new information about two additional suspects in the case. He included discovery showing that the other suspects and E.F. were involved in a gang, owned firearms, and were more sophisticated than R.H. was. He also provided the court with a DNA report indicating that E.F.—and not R.H.— handled one of the pistols seized in connection with the offense. The results from the other pistol were inconclusive.

The day before the disposition hearing, the court received a report from probation detailing 12 additional incidents involving R.H. at East Mesa between July and December 2023. The incidents included several "gang" and "non-gang" fights, possession of contraband, and inciting a riot.

C. *Contested Disposition Hearing*

The court held a contested disposition hearing in January 2024. Dr. Marina Bassili, a clinical psychologist, testified about her evaluation of R.H. at East Mesa. She noted that R.H. had suffered traumas including losing friends to community violence and drug overdoses, dealing with his parents' divorce, and being bullied for his size and stature. Dr. Bassili observed that R.H. had an extensive history of executive functioning concerns, including from potential attention deficit hyperactivity disorder and

4

R.H.'s heavy alcohol and cannabis use. She testified that he seemed remorseful and would be amenable to treatment.

Arthur Soriano, President and Chief Executive Officer of Youth Empowerment, testified on R.H.'s behalf. Soriano explained that his organization serves detained youth at East Mesa and provides case management and mentorship for when they reenter the community. Soriano, who had mentored R.H. for about a year while he was detained, said R.H. was enthusiastic and kept up with the program's homework. Soriano also believed R.H. was honest and remorseful.

After Soriano's testimony concluded, several of the victims' family members gave impact statements. Nicholas's father testified about how his son was a good student, athlete, and member of the community. He also told the court about the trauma he and his family have suffered from losing Nicholas. Jesus's mother talked about Jesus's childhood and the impact his death has had on their family. Jesus's brother talked about his own trauma from having to break the news to both his and Nicholas's parents about the deaths, and Jesus's father testified about the pain he has suffered from the loss. Lastly, two friends of Nicholas's family each told the court about losing their own sons, one to gun violence and one to a drunk driver.

D. *Final Disposition*

After reviewing the testimony, pleadings, documents, and oral arguments, the juvenile court declared R.H. a ward of the court and sentenced him to the baseline term of seven years at the SYTF with a maximum confinement term of 50 years to life. The court considered the nature and circumstances surrounding the charges to be a strong argument for an SYTF commitment. It also considered "the decedents and the impact of this case upon their family members[.]" The court acknowledged R.H.'s

age, lack of criminal history, past trauma, and struggles with addiction, but it also found that R.H.'s behavioral difficulties—including his misconduct while in custody—made commitment to a YTC inappropriate. In the court's view, a "highly controlled environment through a secure track commitment with structured individualized needs-based programming for an extended period of time" would best address R.H.'s behavior.

## DISCUSSION

R.H. contends the court abused its discretion when it ordered him committed to an SYTF instead of sentencing him to a less restrictive alternative. R.H. does not request a specific alternative on appeal but argues that there is evidence to support that an SYTF commitment was not "suitable or necessary."

We review a juvenile court's decision to commit a minor to confinement for abuse of discretion. (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 908.) An abuse of discretion occurs when the court's factual findings critical to its decision find no support in the evidence. (*Ibid.*) The appellate court therefore considers whether substantial evidence—meaning evidence reasonable in nature, credible, and of solid value—supports the juvenile court's commitment order in light of the purpose of the juvenile court law. (*Ibid.*; § 202, subd. (b) [a minor "in need of protective services shall receive care, treatment, and guidance consistent with their best interest and the best interest of the public"].) We must indulge all reasonable inferences to support the juvenile court's decision. (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1080.)

A court determining the appropriate disposition of a section 602 case must consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense, and (3) the

6

minor's previous delinquent history.  (§ 725.5.)  If the minor is adjudged a ward under section 602, "the court may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor." (§ 727, subd. (a)(1).)  The court has the discretion to place the ward at home, on probation, with or without electronic monitoring, or to order various forms of commitment.  (§§ 727, subd. (a)(2)–(3), 730, subd. (a).)

The court also has the discretion to order a juvenile who is 14 years of age or older to be committed to an SYTF for a period of confinement if certain criteria are met, including a finding on the record that a less restrictive, alternative disposition for the minor is unsuitable.  (§ 875, subd. (a).)  The court must base its determination for a less restrictive alternative disposition on the following criteria: "(A) The severity of the offense or offenses for which the ward has been most recently adjudicated, including the ward's role in the offense, the ward's behavior, and harm done to victims.  [¶]  (B) The ward's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the ward.  [¶]  (C) Whether the programming, treatment, and education offered and provided in a secure youth treatment facility is appropriate to meet the treatment and security needs of the ward.  [¶]  (D) Whether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court.  [¶]  (E) The ward's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing the ward to a term of confinement in [an SYTF]."  (§ 875, subd. (a)(3)(A)–(E).)

R.H. argues the court abused its discretion in committing him to an SYTF because: (1) not all murders committed by a minor warrant "automatic

commitment" to an SYTF; (2) this was R.H.'s first offense; (3) Dr. Bassili and Soriano both testified that R.H. was doing well in a less restrictive placement; (4) the evidence "strongly indicated" an SYTF was not necessary for rehabilitation; and (5) R.H.'s specific needs related to his age, trauma, and behavioral issues could be met in a less-restrictive placement.

We discern no abuse of discretion. The court expressly considered a YTC placement and acknowledged its duty to consider a less restrictive available alternative. The court reasonably concluded, however, that a YTC was not a suitable alternative for R.H. because of the nature of the offense and R.H.'s behavioral issues. Despite his young age, R.H. played a significant role in the murders by identifying Jesus as a target, luring the victims under false pretenses, arming himself, and participating in the ambush. He displayed callousness both in discussing the robbery beforehand, sending an emoji to the victim immediately after the shooting, and then messaging E.F. in the hours that followed. Although R.H. had no previous criminal history, when making a finding that a less restrictive alternative disposition is not suitable, the court is not required to first attempt a less restrictive placement before ordering commitment to one that is more restrictive. (See *In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1159.) Moreover, the court justifiably relied on the fact that while in detention, R.H. was the subject of over 20 incident reports involving fights and rule infractions.

R.H.'s argument on appeal is essentially that there was evidence to support committing him to a less restrictive placement. But "if the evidence is such that rational people could reach conflicting conclusions, there is by definition substantial evidence to support the [decision]." (*People v. Riley* (2015) 240 Cal.App.4th 1152, 1166; see also *In re Reynaldo R.* (1978) 86

8

Cal.App.3d 250, 256 [commitment was not an abuse of discretion even if minor's record justified less restrictive disposition].)  We therefore conclude that the juvenile court did not abuse its discretion because substantial evidence supports its commitment order.

DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:


DO, Acting P. J.


KELETY, J.